UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| EDWARD L. WILLIAMS, et al., | ) | CASE NO. 5:05 CV 1149 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| JOHN DONOFRIO, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On May 6, 2005, plaintiff pro se Edward L. Williams, on behalf of himself and the Elizabeth Williams Group Home, Inc. ("Group Home"), filed this action under 42 U.S.C. §§ 1983 and 1985 against Summit County Fiscal Officer John Donofrio, Summit County Prosecutor James A. Rogers, Ohio Division of Taxation Director Thomas Zaino, Ohio Division of Taxation Employee William W. Wilkins, Summit County Court of Common Pleas Judge Mary Spicer, and Summit County Clerk of Court Diana Zeleski. In the complaint, plaintiff alleges that the Group Home was improperly denied a property tax exemption, that he was treated in a less favorable manner by taxation employees on the basis of his

race, and that several rulings in a state foreclosure action were improper. He seeks an injunction halting the sale of the Group Home's property, and monetary damages. Mr. Williams also filed an Application to Proceed In Forma Pauperis. That Application is granted.

*Background*

The Elizabeth Williams Group Home, Inc., is a non-profit corporation which was granted 501(c)(3) tax exempt status by the United States Internal Revenue Service some time before December 1995. Mr. Williams claims he used this status to request a property tax exemption for a tract of real property which he does not identify in the complaint.[1] At the time the request was first made, the Group Home did not hold title to the property. Mr. Williams claims initially he was told he needed to wait two years to file for the property tax exemption. He alleges that the State "took two more years to tell me the facility had to be transferred into the name of the Group Home" before the Group Home could apply for a tax exemption. (Compl. at 4.) He claims "we put the property into the name of the Group Home and reapplied." (Compl. at 4.) He states he waited another two years to be told that delinquent property taxes totaling $30,000.00 had to be paid in full in thirty days before the application could be processed. He indicates that the non-profit corporation could not pay the taxes in so little amount of time.

Mr. Williams claims that he was treated in an unfavorable manner in the application process on the basis of his race. Specifically, he contends he spoke on the telephone to Summit County employee Donna Cummins who told him he could "go back 3 years." (Compl. at 3.) He claims when he

---

[1] Mr. Williams gives no information regarding his relationship to the Group Home. The court presumes that he is either a trustee, an officer, or both.

2

arrived at the county office later that day, she denied giving him this information.  He claims she altered her advice when she saw that he was an African American.  Mr. Williams contends he then called the Ohio Division of Taxation and spoke with a woman named Elizabeth.  He claims she also told him he could "go back 3 years." (Compl. at 3.) He states he called her numerous times to check the status of his application but could not get Elizabeth to return his calls.  He claims that when she eventually answered his call, she denied giving him that information.  Mr. Williams claims that Ms. Cummins coded his application to indicate his race prior to sending it to the Ohio Department of Taxation.

Summit County has apparently been attempting to foreclose on the property for non-payment of the taxes.  Mr. Williams states that "when they filed the foreclosure papers, [he] had 40 days to answer or lose by default."  He claims he filed his answer within this time frame, but the prosecutor filed a Motion for Default Judgment.  He indicates he sent his answer by certified mail, and produced the return receipt thereby avoiding judgment by default. The Prosecutor then filed a Motion for Summary Judgment which was eventually granted by Judge Mary Spicer.  Mr. Williams filed a Motion under OHIO R. CIV. P. 60(B) which was denied.  An appeal of this decision is currently pending in the Ohio Ninth District Court of Appeals.  Summit County is now attempting to execute on the judgment by forcing the sale of the property at sheriff's auction.  Mr. Williams states he filed "a stay order with the appeals court to stop Summit County from illegally selling our property.  The judge Mary Spicer allowed it and the Clerk of Court delivered this illegal document as if it was legal." (Compl. at 6.)  He asks this court to enjoin the sale of the property, and to award him damages.

*Analysis*

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[2] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to §1915(e).

As an initial matter, Mr. Williams cannot assert claims on behalf of the Group Home. In general, a party may plead and conduct its case in person or through counsel. See 28 U.S.C. § 1654; Eagle Associates v. Bank of Montreal, 926 F.2d 1305, 1308 (2d Cir. 1991).[3] Because corporations and non-incorporated organizations are artificial entities which exist only as legal fiction, they cannot appear pro se in any litigation. Id. at 1310. Consequently, they are required to appear in court through an attorney. Paris v. Herman, No. 99-5338, 2000 WL 571932 at *2 (6th Cir. May 3, 2000); Eagle, 926

---

[2] An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

[3] 28 U.S.C. § 1654 provides:

> In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as by the rules of such courts, respectively, are permitted to manage and conduct cases therein.

F.2d at 1310.[4] There is no indication that Mr. Williams is a licensed attorney. This court can consider only the claims that are personal to Mr. Williams and which do not rest on rights belonging to the Group Home.

It is not clear whether the claims surrounding the foreclosure action belong to Mr. Williams or to the Group Home. To the extent that the Group Home is the injured party, these claims are not properly before the court for the reasons stated above. To the extent that Mr. Williams has suffered an injury of his own which is sufficient to give him standing to raise these claims, they are nonetheless subject to dismissal.

The court notes at the outset that three of the five defendants are entitled to immunity for actions taken in the course of conducting or officiating over litigation. Judge Spicer is entitled to absolute judicial immunity from civil suits for money damages. Mireles v. Waco, 502 U.S. 9, 9 (1991); Barnes v. Winchell, 105 F.3d 1111, 1115 (6th Cir. 1997). This far-reaching protection is needed to ensure that the independent and impartial exercise of judgment of judicial officers is not impaired by the exposure of potential damages. Barnes, 105 F.3d at 1115. For this reason, absolute immunity is overcome only in two situations: (1) when the conduct alleged is not performed when the defendant was acting as a judge; or (2) when the conduct alleged, although judicial in nature, is taken in complete absence of all jurisdiction.

---

[4] See also, Brown v. Internal Revenue Service, 172 F.3d 47 (6th Cir. 1998); AAA Venetian Blind Sales, No. 9601108, 1997 WL 476517 at *2 (6th Cir. Aug. 19, 1997), Kinder Capital v. Unity Community, No. 95-1542, 1996 WL 229819 (6th Cir. May 6, 1996); Church of the New Testament v. U.S., 783 F.2d 771, 773 (9th Cir. 1985); Doherty v. American Motors Corporation, 728 F.2d 334, 340 (6th Cir. 1984); Ginger v. Cohn, 426 F.2d 1385, 1386 (6th Cir. 1970); Move Organization v. U.S. Dept. of Justice, 555 F. Supp. 684, 692 (E.D. Pa. 1983).

Mireles, 502 U.S. at 11-12; Barnes, 105 F.3d at 1116. The judge will be not deprived of immunity even if the action she took was performed in error, done maliciously, or was in excess of her authority. Stump v. Sparkman, 435 U.S. 349, 356-57 (1978). Mr. Williams has not alleged facts which reasonably suggest Judge Spicer should be deprived of absolute judicial immunity.

Similarly, prosecutors are absolutely immune for their conduct in presenting the state's case. Imbler v. Pachtman, 424 U.S. 409, 431 (1976); Pusey v. Youngstown, 11 F.3d 652, 658 (6th Cir. 1993). Mr. Williams objects to Mr. Rodgers's filing of a Motion for Default Judgment after Mr. Williams claims he mailed a copy of his answer to Mr. Rodgers, and Mr. Rodgers's filing of the Motion for Summary Judgment, which Mr. Williams claims was not properly served on him. All of these action were taken in the course of presenting the state's case for which Mr. Rodgers is entitled to absolute immunity.

The Clerk of Court is also immune for her role in processing documents presented to her for filing or for issuing to the parties. Court clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process, unless those acts are done in the clear absence of all subject matter jurisdiction of the court. Foster v. Walsh, 864 F.2d 416, 417 (6th Cir. 1988); Mullis v. U.S. Bankruptcy Court, Dist of Nevada, 828 F.2d 1385, 1390 (9th Cir. 1987). Acts committed in error or in excess of jurisdiction will not abrogate immunity, even if it results in "grave procedural errors." Id. The act of the court clerk about which plaintiff complains - disseminating the order of a judge - is an integral part of the judicial process and within the subject matter jurisdiction of the Summit County Court of Common Pleas. Sindram v. Suda, 986 F.2d 1459, 1461

6

(D.C. Cir. 1993)(citing the Sixth Circuit's decision in Foster).[5] Diana Zeleski is therefore entitled to absolute immunity from damages.

Furthermore, it is clear that the claims surrounding the foreclosure action are nothing more than an attack on the Common Pleas Court judgment. United States District Courts do not have jurisdiction over challenges to state court decisions even if those challenges allege that the state court's action was unconstitutional. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 n. 16 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923). Federal appellate review of state court judgments can only occur in the United States Supreme Court, by appeal or by writ of certiorari. Id. Under this principle, generally referred to as the Rooker-Feldman Doctrine, a party losing his case in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the party's claim that the state judgment itself violates the his or her federal rights. Johnson v. DeGrandy, 512 U.S. 997, 1005-06 (1994). Federal jurisdiction cannot be invoked merely by couching the claims in terms of a civil rights action. Lavrack v. City of Oak Park, No. 98-1142, 1999 WL 801562 *2 (6th Cir. Sept. 28, 1999); see also, Valenti v. Mitchell, 962 F.2d 288, 296 (3d Cir.1992).

---

[5] See Fish v. Murphy, No. 01-3601, 2001WL 1355611(6th Cir. Oct. 26, 2001)(finding the clerk of court was entitled to absolute immunity even though he stamped the wrong date on the document which resulted in the dismissal of an appeal); Harris v. Suter, No. 00-3309, 2001 WL 111586 (6th Cir. Feb. 1, 2001)(holding clerk was entitled to absolute immunity for actions associated with filing or failing to file a document); Burton v. Mortimer, No. 99-1956, 2000 WL 876517 (6th Cir. June 22, 2000)(finding the denial of free copies of the file and a delay in forwarding the record to the state court of appeals which results in an erroneous dismissal for lack of jurisdiction and are both quasi-judicial functions which entitle the clerk to absolute immunity); see also Foster, 864 F.2d at 417 (the act of issuing an order of a judge is a quasi-judicial function entitled to immunity).

The United States Sixth Circuit Court of Appeals has applied two elements to a Rooker-Feldman analysis. First, in order for the Rooker-Feldman doctrine to apply to a claim presented in federal district court, the issue before the court must be inextricably intertwined with the claim asserted in the state court proceeding. Catz v. Chalker, 142 F.3d 279, 293 (6th Cir. 1998); see Tropf v. Fidelity National Title Insurance Co., 289 F.3d 929, 937 (6th Cir. 2002). "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment." Catz, 142 F.3d at 293. Second, the Rooker-Feldman doctrine precludes a district court's jurisdiction where the claim is a specific grievance that the law was invalidly or unconstitutionally applied in plaintiff's particular case as opposed to a general constitutional challenge to the state law applied in the state action. Id.; Tropf, 289 F.3d at 937.

Mr. Williams directly attacks the state court's decision in the foreclosure action. All of the allegations concerning the matter in Summit County Court of Common Pleas are premised on his belief that the law was incorrectly applied to his case, and that the state court was therefore mistaken in rendering its decisions against him. Moreover, Mr. Williams requests as relief that the execution of the state judgment be enjoined. Any review of federal claims asserted in this context would require the court to review the specific issues addressed in the state court proceedings against Mr. Williams. This court lacks subject matter jurisdiction to conduct such a review or grant the relief as requested. Feldman, 460 U.S. at 483-84 n. 16; Catz, 142 F.3d at 293.

The claims that Mr. Williams intends to bring against Mr. Donofrio, Mr. Zaino, or Mr.

8

Wilkins are unclear. There is no suggestion that they were involved in the foreclosure action. In fact, Mr. Williams states no specific allegations against them and there are no claims apparent on the face of the pleading which Mr. Williams could personally assert against them.[6] Principles requiring generous construction of pro se pleadings are not without limits. See Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985). A complaint must contain either direct or inferential allegations respecting all the material elements of some viable legal theory to satisfy federal notice pleading requirements. See Schied v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988). District courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments. Beaudett, 775 F.2d at 1278. To do so would "require ...[the courts] to explore exhaustively all potential claims of a pro se plaintiff, ... [and] would...transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Id. at 1278. Moreover, plaintiff's failure to identify a particular legal theory in his complaint places an unfair burden on the defendants to speculate on the potential claims that plaintiff may be raising against them and the defenses they might assert in response to each of these possible causes of action. See Wells v. Brown, 891 F.2d at 594. Even liberally construed, the complaint does not sufficiently state a federal claim against these defendants.

Mr. Williams does assert that he was the victim of racial discrimination during the tax

---

[6] Mr. Williams cannot assert, on behalf of the Group Home, that it was wrongfully denied a tax exemption for its property.

9

exemption application process. While Mr. Donofrio, Mr. Zaino, and Mr. Wilkins are associated with the taxation authorities implicated in the allegations, there are no allegations in the complaint connecting these particular defendants to the alleged conduct giving rise to this claim. Mr. Williams alleges that County worker Ms. Cummins altered her advice to him when she saw he was an African American. He further contends that he received similar treatment from a woman named Elizabeth who works for the Ohio Department of Taxation. None of the allegations suggest Mr. Donofrio, Mr. Zaino, or Mr. Wilkins was personally involved in the incidents.

It is possible that Mr. Williams has named Mr. Donofrio, Mr. Zaino, and Mr. Wilkins as defendants because they supervise or employ the individuals who perpetrated the alleged discrimination. Supervisory liability cannot be imposed on a theory of respondeat superior. See Monell v. Department of Soc. Servs., 436 U.S. 658, 691(1978). To be held liable for a claim for damages, the supervisor must have encouraged the specific misconduct or in some way directly participated in it. See Monell, 436 U.S. at 690-91; Hays v. Jefferson County, Ky., 668 F.2d 869 (6th Cir. 1982); Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Liability can be imposed upon a supervisor in any of the following situations: (a) when the supervisor actively participates in the unconstitutional conduct; Birrell v. Brown, 867 F.2d 956, 959 (6th Cir. 1989); (b) when the supervisor encourages or condones the specific incident of misconduct; Id.; (c) where the supervisor has a policy of inadequately training subordinates; Barber v. Salem, 953 F.2d 232, 236 (6th Cir. 1992); and (d) when the supervisor fails to conduct a reasonable inquiry into the incident after the fact. Marchese v. Lucas, 758 F.2d 181, 188 (6th Cir. 1985). Again, the complaint contains no suggestion of a basis to impose liability on these defendants for the actions of

their subordinates.

*Conclusion*

Accordingly, Mr. Williams's Application to Proceed In Forma Pauperis is granted and this action is dismissed pursuant to 28 U.S.C. 1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[7]

IT IS SO ORDERED.


Dated: August 17, 2005                          s/    *James S. Gwin*
                                                JAMES S. GWN
                                                UNITED STATES DISTRICT JUDGE

---

[7]     28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.

11